May it please the Court. This is a rare case in which an arbitral forum appointed an arbitrator who was not qualified under any arguable construction of its rules. When did you object? When did you object to that? The client who was representing his own company, the CEO of the company, raised the objection verbally to the chair after the argument but before the submission. He had in his affidavit submitted to the trial court and the objection was also raised in a post-arbitration motion to vacate the award filed with the HBA. And what happened is as soon as Dr. Heller found out that the non-lawyer arbitrator was a full-time employee of the law firm, he contacted the chair of the Fee Dispute Committee and registered that concern. That was before the award was issued. What he testified to in his affidavit is that he detected something off about the non-lawyer arbitrator. He feared a lack of impartiality and conducted some research. Now there were emails containing the name of the non-lawyer arbitrator and the name of the law firm, Jackson Walker, that employed her. But those emails did not say attorney. It did not say law firm. He did not know that and he believed that it was an accounting firm. So he did object. But the problem that you've got, I think, is that the burden ought to be on everybody participating in this thing to raise an objection like that right at the outset. And that means that you've got to do your homework before the whole dance gets started. And you didn't do that here. Well, I would submit that there is no duty to conduct an inquiry where the rules say no financial interest, direct or indirect, in the practice of law. A member of the public who agrees to submit a fee dispute to arbitration shouldn't be able to rely on that representation in the rules. Didn't your client agree that the fee dispute committee was going to interpret its own rules? The HBA rules do state that the chair can interpret the rules. But, again, that comes back to whether this is an arguable construction of the rules. And this is not. This cannot be. And your client agreed the committee could interpret its own rules. That seems – tell me why that isn't game over. Well, there need to be some boundaries. What – if the committee is – if an arguable construction is not required, what is to prevent the HBA from appointing – and this would be absurd but it would be permitted – appointing a horse to sit as the non-lawyer arbitrator? The rules do not say that – or for that matter a ficus plant, because the rules do not say that the non-lawyer arbitrator needs to be a human after all. It doesn't even say that the non-lawyer arbitrator needs to be a sentient being. And so there needs to be and there is some review. It must be an arguable construction. And an arguable construction of the HBA rules does not allow a non-lawyer who is a full-time employee to sit as an arbitrator. The arbitrator was not qualified. And we can talk about why that is. The district court considered the meaning of – the district court, in fact, looked to and attempted to construe or look to the meaning of the term no financial interest, direct or indirect. And we would submit that the district court got it wrong. The district court relied on Black's Law Dictionary and looked to the definition of the term interest. The definition of the term interest under Black's Law Dictionary contains two clauses. One is that an interest is a legal claim or right in property. The other is that an interest is a legal stake or interest. The court wrote that the non-lawyer arbitrator did not have a financial interest solely under the second prong of the definition. She wrote that the non-lawyer arbitrator is not an owner of the law firm and for that reason has no financial interest. It's well settled that a contract, that agreements and statutes are construed according to their plain language and so that no term is rendered meaningless. Every term is given effect. The construction applied by the HBA in this case and by the lower court renders the words direct or indirect financial interest in the practice of law meaningless. And the reason is that a non-lawyer under the Texas Rules of Disciplinary Procedure and the Model Code, a non-lawyer cannot own an interest in the practice of law. A non-lawyer cannot own a law firm. A non-lawyer by definition is someone who does not, who under the cramped definition of financial interest, a non-lawyer would never have a financial interest. It renders the terms direct financial interest in the practice of law, other than as a consumer, meaningless. And I think there are other authorities. The Texas Bar itself has written that in its rule setting forth the qualifications we're sitting on, the Attorney Grievance Committee, the Texas Bar has defined financial interest as including employment by a law firm in other contexts, in Federal statutes and State statutes. The Federal Ethics Regulations, the statute defines financial interest to include employment. The Texas Public Utilities Commission Act defines public, or public, or excuse me, financial interest to include employment. The Texas Attorney General has defined the term financial interest to include employment. So we would submit that there is no arguable construction under which a full-time employee of a law firm is a, would qualify as a non-lawyer without a financial interest. And as a result, the arbitration panel was without authority. Yes, this is an exceptional case. This case also carries a public interest concern. The HBA encourages attorney fee arbitration. The parties agreed to the rules. Those rules advertise a degree of impartiality in at least one of the arbitrators. No financial interest in the practice of law. And unless there are other questions, I will yield the remainder of my time. Yes, you've saved time for rebuttal. Thank you, Mr. Higgins. Thank you. Good morning, Your Honor. Clifford Ashcroft Smith representing myself in this case. I think maybe the most effective use of my time is to squarely address the concerns that the panel has just asked my colleague on the other side. The first objection issue that the panel asked about, about when did LightAge object, zero is the objections in the record before, or I should say in the month following, I guess so that the decision was issued on February 22nd of 2016, and the first objection came in the month following that, which is March. There are no other objections before that. So I think that's a huge problem that they have in this case. There are two affidavits that they use to try and supplement and go back and rewrite the facts in this case. The first one was the March 10th affidavit, and I didn't even know about it, and it's in the record as well. One of my sworn declarations to confirm to, I guess, the district court when I had to go through the litigation process that I had never been made aware of this issue that they suddenly had after the fact, and I think it comports with, I guess, the classic kind of after the fact, trying to go back and rewrite everything that you did wrong to try and have another, I guess, second bite at the apple, if you will, as far as arbitration goes. And they have a second, I guess, affidavit that they try and come in with in December of 2016 in the district court to try and then further clarify the fact that they had forgotten about the fact that Anna Davis, who is a non-lawyer arbitrator, had exchanged, I think it was a total of 22 emails over the course of about four months from October 2015 to the issuance of the award, which is in February of 2016. I think it's on page 45 and 46 of my brief. I went to great lengths to show the huge, giant, bold letters that say Anna O. Davis, payroll manager Jackson Walker, that was a correspondence of emails that was exchanged between the parties at the very outset, and we tried to do lightage a favor, my opponent a favor, in rescheduling the arbitration to accommodate their schedule. And so the parties in the panel exchanged emails, and that's exactly where the email came from that kind of set out where she works as far as that goes. As far as Judge Willett, you had asked about the game-over issue of the HBA interpreting its own rules, and I absolutely agree with you. It's plainly obvious, and it's clear, consistent throughout the HBA rules. I think it's in the record site, page 231, that refers to Rule 2.03 on the duties of the committee, and it makes it very, very clear that the shall or mandatory term is used consistently throughout that, I guess, rule, and the sub-provisions 2.03D and C. D is, you know, the FDC, or basically in this case, the Houston Bar Association, shall have the following powers and duties to interpret the rules and to appoint the arbitrators. There's nobody else in the rules that does that. It was something that both parties looked at. They said they read the rules, they understood the rules, and they agreed to this process. There's no, I guess, ability for other outside interpretations to come in here. LightAge goes to a lot of great lengths to set out all these different things in their brief about a Texas Attorney General, a lottery statute, hearing aid statute, federal statute. The short circuit answer to that, I guess, long explanation that they give is that the parties didn't agree to interpretation based on those other things. We only agreed to the Houston Bar Association's interpretation of their own rules. That's it. And it really is that simple. And it's frustrating at times to figure out why, respectfully, that we're here, because it should be plainly obvious that the rules make pretty plainly clear that the Houston Bar Association is to liberally construe their own provisions really to go at the fundamental purpose of trying to resolve a dispute. And this case is the exact opposite of what arbitration is really all about, which is an efficient and cost-effective method or an alternative to protracted after-the-fact litigation. Did Ms. Davis share in Jackson Walker's profits? No, as far as I know. First of all, and not only is that a non-issue, but we're not even sure what her exact role is. But my opponent, I think at one part of his brief, tries to talk and explain that perhaps there is a property interest in her salary, if she had one. We don't even know if she had a salary. We don't know exactly if she was full-time or not. What we do know is that, one, she wasn't a lawyer, two, that if she was compensated by Jackson Walker, which is a reasonable construction of the record, that an at-will employee in Texas does not have a property interest that's protected. And the two cases that they cite to in their brief refer to public employees, which is just simply not applicable in this case. I think that, really, this issue involved is an exceeding authority challenge that they've raised under 9 U.S.C. 10-A-4. But, really, I think what's unique about it is that it's simply just a complaint about the HBA's interpretation and application of their own rules. And I think this Court's decision in BULCO is applicable and should guide the Court's analysis, and BULCO refers directly to the U.S. Supreme Court's decision in Howsam v. Dean Witter that says that the procedural nature of this type of an issue is something that I think the parties would reasonably expect a forum-based, local entity to make a decision on in place of the Court. And it's not really a what or an if, which would go to, like, substantive arbitrability issues. Likewise, it's not a case where you have a method challenge. There's nothing like these string of cases. If you look at the Court's reasoning in BULCO and a lot of other cases they talk about, well, if the method set out said that there's supposed to be three arbitrators and they only appointed two, we don't have that here. What we have here is two lawyers and one non-lawyer appointed by the HBA rules according to their own interpretation, which the rules say that they should plainly be able to interpret. And there's no one else in the rules, no anybody else that should be deciding that except the Houston Bar Association. Well, the point is that arbitration is all about what the parties agree to. Nobody has to agree to arbitration. Once they agree to it, then we look to what did they agree to have decided by arbitration. And here they decided that this sort of issue would be decided in the arbitration. That's the end of it. It all has to do with agreement. Yes, sir. I don't know if there's any other questions. I'm trying to think if there's anything else that would be appropriate to address here that might be helpful to the Court. Well, you haven't waived anything that's in your brief, so. Yes, sir. So I'll give back the rest of my time unless the panel have any other questions that I can address from my briefing at all. All right. Thank you, Mr. Smith. Mr. Higgins, you saved time for rebuttal. Very short. Thank you. There is no argument. Today, Mr. Ashcroft Smith did not make an argument that a reasonable, that an arguable construction of no financial interest other than as a consumer, direct or indirect in the practice of law, can include an individual who is a full-time employee of a law firm. What the argument distilled to its essence is, is that the words to interpret these rules gives the HBA, regardless of the party's agreement, regardless of what is stated in the HBA rules, carte blanche to determine the qualifications of the arbitrators. It renders the language meaningless, and there needs to be an arguable interpretation. I would like to address briefly the waiver question. First of all, LightAge did not learn about Davis's full-time employment at a law firm until after the arbitration agreement. There's no evidence until after the arbitration occurred, and LightAge registered its objection after arbitration but before the award, and it registered its objection again following the award. A party is not required to object to the qualifications of an arbitrator if it does not have actual notice. This is not an impartiality challenge. This is a qualifications power to decide the case challenge. And constructive knowledge is not the test for that challenge. LightAge would request the court to reverse the judgment of the district court and order this case and direct the district court in an order of locator. Thank you, Mr. Hagan. The case is under submission.